## BAPTIST GENERAL CONVENTION et al. v. WRIGHT et al.

No. 17959. Opinion Filed April 23, 1929.

Billups & Billups, for plaintiffs in error.

E. L. Fulton, for defendant in error J. W. Maney.

Abernathy & Howell, for defendant in error O. H. Wright.

CULLISON, J. O. H. Wright, one of the defendants in error, plaintiff below, commenced an action in the district court of Oklahoma county, Okla., against the Baptist General Convention of the State of Oklahoma, Inc., F. M. McConnell, and C. P. Stealey, plaintiffs in error, defendants below, to recover $2,850 balance of unpaid rent due the plaintiff from the defendants.

For brevity the parties will be referred to as they appeared in the trial court.

The plaintiff, for his cause of action against the defendants in the court below, says:

"Comes now the plaintiff, and for cause of action against the defendants, and each of them, alleges and states:

"(1) That on the 19th day of March, 1920, the plaintiff and defendants executed a lease contract in writing for property described therein as 'premises upstairs known as 126½ West Main street, Oklahoma City, Oklahoma,' for the term beginning July 1, 1920, and ending January 1, 1925, for a rental to be paid to the plaintiff of the sum of $350 per month, payable on the first day of each month in advance; a true copy of said contract is hereto attached marked Exhibit 'A' and made a part hereof.

"(2) That the defendants took possession of said premises and paid rentals for all months in the sum of $350 per month to the first day of April, 1924, but though often requested to do so, have failed, neglected and refused to pay the rentals for the balance of said contract. in the sum of $2,850.

"Wherefore, plaintiff prays judgment against the defendants and each of them for the sum of $2.850 with interest thereon from August 1, 1924, at the rate of six per cent. per annum. and for all other and further proper relief."

Those provisions of the leases which are material to a proper determination of this case will be found in the body of the opinion.

The defendant Convention, in its amended answer to the plaintiff's petition, says:

"(1) Comes now the defendants in the above entitled and numbered cause, and for answer to the petition of the plaintiff filed herein deny each and all of the allegations in said petition contained. except such as are hereinafter expressly admitted.

"(2.) The defendant Baptist General

Convention of the State of Oklahoma, Inc., a corporation, admits that on or about the time alleged in plaintiff's petition it executed a lease contract in writing for property described therein as 'Premises upstairs known as 126½ West Main street, Oklahoma City, Okla.,' for the term beginning July 1, 1920, and ending January 1, 1925, for an agreed rental to be paid to the plaintiff in the sum of $350 per month, payable on the first day of each month in advance, and that a true copy of said contract is attached to plaintiff's petition, marked 'Exhibit A,' which is herein and hereby referred to as a part of this answer.

"This defendant also admits that it took possession of said premises and paid the rentals as agreed on in said contract for all months up to the first day of April, 1924, and has refused to pay any of the subsequent rentals or any rentals for the balance of the term of said contract for the reasons as hereinafter set forth. * * *

"Our lease contains the following clause:

" 'It is understood by and between the parties hereto that first party does not own said premises, but has leased the same from one J. W. Maney, and that this lease shall in all things and conditions be subject to the terms and bound by the restrictions contained in said lease by first party with said J. W. Maney, and first party hereby assigns to second parties his rights thereunder to the elevator service, heat and water for said upstairs of said premises. * * *

"This defendant alleges that the heat and elevator service rendered to it were totally inadequate during the winter of 1923-1924; that its employees and its officers sustained great discomfort during said winter on account of the cold weather and lack of heat. * * *

"This defendant further alleges that the lease made by and between J. W. Maney, the owner of the building, and C. H. Wright, this defendant's lessor, was made and entered into on the 25th day of June, 1919, whereby the lessor, J. W. Maney, leased the plaintiff, C. H. Wright, the first and second floors of the building now located on lots 12 and 13, block 23 of Oklahoma City, Okla., as shown by the record plat thereof, being numbered 124-126 West Main street, Oklahoma City, Okla., and known as the Empire Building, from the first day of June, 1920, to the 21st day of December, 1924, a copy of which lease contract is hereto attached as part of this answer, marked 'Exhibit A,' and that it is therein agreed that heat and elevator service shall be furnished without cost to party of the second part. It is further provided in said lease that the second party (C. H. Wright) shall not assign the lease without the written consent of the first party. Defendant alleges that no written consent was given by said J. W. Maney of said lease contract or any part of it.

"If, however, it be found and determined that the said J. W. Maney has ratified said assignment, which the defendants expressly deny, and that judgment be rendered against the defendants, or either of them in accordance with the plaintiff's prayer; and it be further found that heat and elevator service were not furnished the defendants as provided in said contract, exhibit 'A' hereof, and as provided in the lease contract between plaintiff and the defendants, as set out in plaintiff's exhibit 'A,' then, in that event, defendants pray judgment of and against J. W. Maney for the sum of any judgment which may be allowed the plaintiff in this action, and that in order to have a complete determination and settlement of the question involved herein J. W. Maney be made a party defendant, he being a necessary party to a complete determination of all the issues in this case.

"Wherefore, this defendant alleges that there is due the plaintiff herein nothing whatsoever, but that in the event judgment be had against these defendants, that these defendants have judgment over and against J. W. Maney in any sum judgment may be awarded against these defendants, and that J. W. Maney be made a party to this motion, and for such other and further relief as the court may deem just and proper.

"Special Defense of Defendants, F. M. McConnell and C. P. Stealey.

"The defendants F. M. McConnell and C. P. Stealey hereby adopt, as and for their answer, all and singular the allegations contained in the foregoing answer of the Baptist General Convention of the State of Oklahoma, Inc., and for additional answer allege that they were merely sureties on the lease contract sued on in this action and not principals, and they pray that if any judgment be rendered against them that it be rendered against them as sureties on the contract sued on in this case and not as principals.

"These defendants having fully answered, ask to be discharged."

The trial court made J. W. Maney a party defendant, who will be referred to hereinafter as defendant Maney.

The plaintiff, for his reply to the amended answer of the defendants, says:

"Comes now the plaintiff, and, for reply to the amended answer of the defendants, Baptist General Convention of Oklahoma, a corporation, F. M. McConnell and C. P. Stealey, alleges and states:

"(1) That he denies each and every material allegation in said amended answer of the defendants contained, except such as are hereinafter specifically admitted.

"(2) That under and by virtue of the agreement attached to the plaintiff's petition, it is specifically provided: 'It is understood by and between the parties hereto that first party (the plaintiff herein) does not own said premises but has leased the same from one J. W. Maney, and that this lease shall, in all things and conditions, be subject to the terms and bound by the restrictions contained in said lease by first party with said J. W. Maney, and first party hereby assigns to second parties his rights thereunder to the elevator service, heat and water for said upstairs of said premises.'

"Plaintiff alleges that under the terms of said agreement and under the above paragraph thereof, the premises taken by the defendants, described in said contract, and all rights of the plaintiff thereunder were assigned to the defendants and that said assignment was consented to by J. W. Maney; and that there was no obligation under said lease agreement on the plaintiff to furnish to said defendants elevator service or heat; that the defendants, under said agreement, took and received all rights that the plaintiff had, as to said elevator service and heat, under his lease from J. W. Maney. * * *"

The defendant Maney, for his answer to the amended answer of the defendant Convention, says:

"Comes now J. W. Maney who has been heretofore made a party defendant herein by order of court and for his answer to the amended answer of the defendants above named alleges and says:

"(1) This defendant admits that he is the owner of the premises described in the lease between him and the plaintiff, a copy of which is attached to said defendant's answer, and he admits the execution and delivery of said lease; that said lease contains the following provision and condition, to wit:

"'It is further agreed that the second party shall not assign this lease without the written consent of the first party.'

"This defendant says that said provision is a valid one and is binding not only on the plaintiff but also on the defendants above named; that this defendant never had any dealings of any kind with said defendants; that he knew said defendants occupied a portion of the second floor in said building for a period, but this defendant until after this action was instituted never knew the terms or conditions of the agreement between them and the plaintiff, but supposed that they were mere sublesses of the plaintiff; that the plaintiff under the terms of said lease had the right to sublease said premises without the consent of the defendant, but had no right to assign his said lease or any portion thereof without the consent

in writing of the defendant; that if said defendants and plaintiff did enter into the lease, a copy of which is attached to plaintiff's petition, and which therein provided that the plaintiff assigned to said defendants the rights of the plaintiff to heat and elevator service, that the same has never been consented to by this defendant in writing, and this defendant never knew until after this action was instituted that said lease contained any such provision.

"(2) The defendant further says that he never at any time recognized the defendants above named as tenants of his, but always looked to the plaintiff for his rent, and the rent of said premises was paid by the plaintiff to this defendant for the entire term of said lease and that no contractual relations regarding the use or occupancy of said premises ever existed between said defendants and this defendant. * * *"

The plaintiff, for reply to the answer of defendant J. W. Maney, says:

"Comes now the plaintiff and for reply to the answer of J. W. Maney to the petition of the plaintiff alleges and states:

"(1) That he denies each and every allegation in said answer contained except such as admit the allegations of plaintiff's petition.

"(2) Plaintiff alleges that at and about the time of said agreement with the Baptist General Convention he informed J. W. Maney that he had made a contract with the Baptist General Convention and F. M. McConnell and C. P. Stealey for the renting of the upstairs of said building for the entire term remaining of said lease and that heat and elevator service were to be furnished to them by said Maney; and that the said Maney acquiesced therein; and that the said Maney knew at said time from the letter of the defendants set out in their answer that heat and elevator service was assigned to the said defendants; and that the said J. W. Maney at no time objected thereto, but acquiesced therein. * * *"

The record in this case shows that on May 3, 1923, a jury was called and sworn to try the cause. Opening statements were made by counsel; witnesses sworn; evidence introduced and demurrers interposed. On May 4th, all jurors present, plaintiff's demurrer to defendants' evidence sustained. Defendant J. W. Maney's demurrer to defendants' evidence also sustained. Exceptions allowed defendant Convention. Judgment rendered against all defendants, except J. W. Maney, in the sum of $2,850, with interest at 6 per cent. from August 1, 1924, and costs. On May 15, 1926, motion for new trial overruled; sixty, ten and thirty days to make and serve case-made. Defendants appeal to this court.

154

### Petition in Error.

"(1) Said court erred in overruling the motion of plaintiff in error for a new trial.

"(2) The said court erred in sustaining the demurrer of the plaintiff, C. H. Wright, and also the demurrer of the defendant J. W. Maney to the evidence submitted by the defendants the Baptist General Convention of the State of Oklahoma, Inc., F. M. McConnell, and C. P. Stealey, and rendering judgment upon said demurrer.

"(3) Because the judgment of the court is contrary to the evidence.

"(4) Because the judgment of the court is contrary to the law.

"(5) Error of the court in entering judgment for the plaintiff, without discharging the jury and without taking any action with reference to the jury who had been duly sworn and empaneled to try the case.

"(6) Error of the court overruling the demurrer of the defendants the Baptist General Convention of the State of Oklahoma, Inc., F. M. McConnell, and C. P. Stealey to the evidence offered by the defendant C. H. Wright in support of his cause of action."

Plaintiffs in error elect to combine and discuss all assignments or errors in one general proposition:

"The trial court committed reversible error in sustaining separate demurrers of plaintiff Wright and defendant Maney to the evidence submitted by the defendant Convention and rendering judgment against the Convention."

In view of the relation of each party in this case to the other, it is very necessary to determine their rights or liabilities separately.

First. Did the court err in sustaining the defendant Maney's demurrer to defendant Convention's evidence?

In view of the fact that the defendants have interposed the defense of constructive eviction, it becomes quite necessary to first define "constructive eviction."

The courts uniformly hold "that any disturbance of the tenant's possession by the landlord or by some one under his authority, whereby the premises are rendered unfit for occupancy for the purpose for which they were demised, or the tenant is deprived of the beneficial enjoyment of the premises, amounts to a constructive eviction, if the tenant abandons the premises within a reasonable time." 16 R. C. L. 686.

However, the courts uniformly hold that:
"There can be no constructive eviction without a surrender of possession by the tenant; a tenant who continues to occupy the premises for an unreasonable length of time after the acts or omissions that constitute a constructive eviction waives the eviction and cannot thereafter abandon the premises and assert it." 36 C. J. 264.

Keeping in mind the above and foregoing rules of law, it becomes necessary to consider the evidence in this case in order to determine whether or no a constructive eviction was established or whether the defendants waived the right to assert the defense of constructive eviction.

The evidence in this case shows that on the 19th day of March, 1920, the plaintiff and defendant Convention entered into a written lease contract by the terms of which plaintiff leased to the defendant Convention the following described property: "Premises upstairs known as 126 1-2 West Main street, Oklahoma City, Oklahoma"; defendant Convention to have and to hold the same from July 1, 1920, to January 1, 1925; and defendant Convention agreed to pay plaintiff as rental $350 per month for said above mentioned period, due and payable on the 1st of each month in advance. The said lease also contained the following provision:

"It is understood by and between the parties hereto that first party does not own said premises, but has leased the same from one J. W. Maney, and that this lease shall in all things and conditions be subject to the terms and bound by the restrictions contained in said lease by first party with said J. W. Maney, and first party hereby assigns to second parties his rights thereunder to the elevator service heat and water for said upstairs of said premises."

The lease contract existing by and between the plaintiff and defendant J. W. Maney, the owner of the building, contains the following provision:

"It is further agreed that the second party shall not assign this lease without the written consent of the first party. And it is also agreed that upon the failure to pay the rentals or any part thereof as herein provided, or to otherwise comply with the terms and conditions of this lease by the second party, then the first party may declare at an end and void, and re-enter and take possession of said premises.

" * * * Heat and elevator service shall be furnished without cost to party of the second part."

The evidence further shows that the defendant Convention took possession of said property on July 1, 1920, and vacated the same March 1, 1924. It will be observed that the contract between plaintiff and de-

fendant Convention terminated January 1, 1925.

### Findings of Fact.

The testimony clearly shows that defendant Convention had full knowledge that defendant J. W. Maney was the owner of the premises. The lease between plaintiff and defendant Convention contained the following clause:

"It is understood by and between the parties hereto that first party does not own said premises, but has leased the same from one J. W. Maney, and that this lease shall in all things and conditions be subject to the terms and bound by the restrictions contained in said lease by first party with said J. W. Maney, and first party hereby assigns to second parties his rights thereunder to the elevator service, heat and water for said upstairs of said premises."

Defendant Convention admits that no written consent was ever given by defendant Maney to the execution of the lease contract between plaintiff and defendant Convention.

Plaintiff and defendant Convention both admit that the lease contract between plaintiff and defendant Maney, the owner of the premises, contains the following provision:

"It is further agreed the second party shall not assign this lease contract without the written consent of the first party."

Defendant Convention testifies they paid the rent to plaintiff; defendant Convention further admits there never was any agreement between the Convention and defendant Maney, the owner of the property, to substitute Maney for the plaintiff Wright; defendant Convention further admits that all negotiations for the renting of said property were with plaintiff and that they knew at that time that plaintiff himself was the lessee under defendant Maney; defendant Convention further admits that they had no contract of any kind with defendant Maney—none whatsoever.

Witness J. B. Rounds, secretary and treasurer of defendant Convention, says (C.-M. 123):

"I looked to Mr. Wright because I was paying Mr. Wright the rent, but I considered Mr. Maney responsible for light and heat."

The evidence is clear that plaintiff leased the premises in question to defendant Convention and only assigned what right he, the plaintiff, had in the same to defendant Convention.

The evidence in this case does not disclose any privity of estate or contract between defendant Maney, the owner and lessor, and the sublessees, defendant Convention.

The evidence is clear and uncontradicted that defendant Maney is the owner of the property; that plaintiff is the lessee under Maney and that defendant Convention is sublessee under plaintiff; that defendant Maney never received any rent money from defendant Convention and made no effort to collect rent from them.

The validity of a clause in a lease restricting the lessee in assigning or subletting has been recognized as valid since an early date:

"Upon the making of a lease there is frequently an express stipulation against assignment, or against subletting, or against both, and the validity of such a stipulation has been recognized from an early time." Gray, Restraints on Alienation, 101; Tiffany, L. & T. 921.

The lessor, defendant Maney, having entered into a lease with plaintiff, Wright, said lease containing a clause restricting plaintiff from assigning his rights under the lease without the written consent of defendant Maney, and it clearly appearing that defendant Maney gave no written consent permitting plaintiff to assign his rights under said lease, and it further appearing that the defendant Maney has not waived any of his rights under the existing lease contract between him and the plaintiff, it follows that the purported assignment from plaintiff to defendant Convention was a breach of the plain terms of the lease with defendant Maney; that there was in fact or in law no assignment; and that the transaction between plaintiff and defendant Convention amounted to a subletting of the premises.

As to the relationship existing between a lessor and sublessee, this court has held:

"As between the lessor and sublessees of the original lessee, there is neither privity of estate nor privity of contract. * * *" First State Bank of Keota v. Wadley, 103 Okla. 147, 229 Pac. 582; Lunsford v. McCann, 67 Okla. 196, 169 Pac. 871.

Tiffany, a recognized authority on the relation of landlord and tenant, in his work "Landlord and Tenant," vol. 1, at page 1003, says:

"A sublessee, since he is in no privity of contract or estate with the original lessor, has, apart from statute, no rights which he can assert as against him except the right to the possession of the land."

It clearly appearing that defendant Con-

vention cannot legally maintain an action against the original lessor, defendant Maney, the trial court correctly ruled in sustaining the demurrer of defendant Maney to the evidence of the defendant Convention.

Second. Did the court err in sustaining the plaintiff's demurrer to defendant Convention's evidence?

Again we observe that on the 19th day of March, 1920, plaintiff and defendant Convention entered into a written lease contract by the terms of which plaintiff leased to defendant Convention the following described property: "Premises upstairs known as 126½ West Main street, Oklahoma City, Oklahoma." Defendant Convention interposes the defense of constructive eviction to plaintiff's cause of action as it did to defendant Maney's answer. Having defined "constructive eviction," it will be unnecessary to repeat. Keeping in mind the fact that defendant Convention had full knowledge that defendant Maney was the owner of the premises, and the various admissions made by defendant Convention, namely, that no written consent was ever given by defendant Maney to the execution of the lease contract between plaintiff and defendant Convention; both parties admitting that said lease contained the following provision:

"It is further agreed that second party shall not assign this lease contract without the written consent of the first party"

—that defendant Convention at all times paid the rent to the plaintiff; defendant Convention further admitting that there never was any agreement between the Convention and defendant Maney, the owner of the property, to substitute Maney for the plaintiff Wright; and defendant Convention further admitting that all negotiations for the renting of said property were with plaintiff and that they knew at that time that plaintiff himself was the lessee under defendant Maney, and defendant Convention further admitting that they had no contract of any kind with defendant Maney, none whatsoever, and having held that defendant Convention has no cause of action against defendant Maney, there remains but one question for determination in this case: Is defendant Convention's evidence sufficient in law to constitute a defense to plaintiff's cause of action?

Plaintiff sued defendant Convention for rent due and unpaid in the sum of $2,850 as per contract. Defendant Convention admits the execution of the lease contract; admits the term of the lease to be from July 1, 1920, to January 1, 1925, or a period of 53 months, at $350 per month. It is also admitted that defendant Convention paid rent to April 1, 1924.

Defendant Convention, further answering, says:

"This defendant alleges that it occupied the premises described in said lease contract and used the same for the general offices of the Baptist General Convention of the State of Oklahoma, and as a book and stationery store conducted by this defendant; that it occupied the premises leased during the winter of 1920-1921, 1921-1922, and 1922-1923, and that during each winter it so occupied said leased premises the same was not fit for occupancy or for use as offices for this defendant, and as a book and stationery store of this defendant, for the reason that the same was so poorly heated that it was occupied and used at the extreme discomfort of its occupants; that the working ability of its occupants was greatly diminished on account of the extreme discomfort they were subjected to because of a lack of heat; and that the said premises could not be occupied and used by this defendant for the purposes they leased the same on account of such lack of heat."

It will be observed that defendant Convention took possession of the premises July 1, 1920, and held same until March 1, 1924, at which time they vacated the property.

It is also true that at various and divers times during all these years and months of occupancy by defendant Convention they were complaining that the heat furnished was inadequate; that they were disturbed in the beneficial enjoyment of the premises. Yet, during all these years, defendant Convention continued to hold possession of said premises until March 1, 1924, at which time they voluntarily vacated same.

It is a well-settled principle of law that:

"There can be no constructive eviction without a surrender of the possession by the tenant; a tenant who continues to occupy the premises for an unreasonable length of time after the acts or omissions that constitute a constructive eviction waives the eviction, and cannot thereafter abandon the premises and assert it." 36 C. J. 264.

"A tenant remaining in possession and paying rent not only for months during which a cause of complaint existed, but for several months thereafter, is estopped from setting up such complaint in justification of an abandonment of the premises. * * * Appellant's principal defense was a breach by appellee of her agreement and duty to furnish a requisite amount of steam heat and hot water. All the evidence on the question related to the winter months and cold weath-

er from February 15, 1894, to the end of June, 1894, during all of which time and three and a half months longer, the appellant paid her rent. * * * The appellant herself testified that she moved out because she was 'afraid to try it the rest of the winter.' In other words, she moved out because of something she feared in the future and not because of what existed * * * in the past; all complaints that may have existed in the past were waived by the appellant by paying all rent for the months in which occasion for complaint existed. * * * A lessee is not at liberty to select out such portion of the term as she is pleased to enjoy and repudiate the balance.'" Orcutt v. Isham, 70 Ill. App. 102.

It is a well-settled rule of law that where a tenant continues to occupy the premises after the acts constituting a constructive eviction, this is a waiver of the eviction. 36 C. J. 264.

In the instant case it is to be noted that in January, 1924, the defendant Convention wrote their lessor, plaintiff, informing him that they would abandon the premises on March 1st. The evidence is silent as to the character of the heat and elevator service rendered after January, although the Convention remained in possession of the premises until March 1, 1924, and paid rent up to and including the month of April, 1924.

"The claim of conditions constituting an eviction which existed several months prior to removal and which did not obtain at the time of removal is insufficient to constitute in law an eviction or justify the abandonment of the leased premises under such claim." Parke v. Proby, 130 Ill. App. 571.

It will further be observed that defendant Convention retained possession of the premises until March 1, 1924, but continued to pay rent for the month of March, up to April 1, 1924, notwithstanding the fact the conditions which prevailed as to heating existed all through the winter months, of which they had knowledge.

"Where a landlord failed to furnish sufficient heat for a rented apartment in December, 1909, and the tenant removed his family to a hotel, but paid the rent for January, 1910, with knowledge of the conditions and of his rights, he waived his right to abandon the premises because of the alleged eviction." Merida Realty Co. v. Coffin. 123 N. Y. S. 120.

The lease contract between plaintiff and defendant Convention contained the following provision:

"It is understood by and between the parties hereto that first party does not own said premises, but has leased the same from one J. W. Maney, and that this lease shall in all things and conditions be subject to the terms and bound by the restrictions contained in said lease by first party with said J. W. Maney, and first party hereby assigns to second parties his rights thereunder to the elevator service, heat and water for said upstairs of said premises."

It will, therefore, be observed that the plaintiff was the lessee under defendant Maney, the owner of said premises, and that defendant Convention was sublessee under the plaintiff herein.

The lease contract entered into by and between defendant Maney, lessor, and plaintiff Wright, lessee, contained the following provision:

"It is further agreed that the second party shall not assign this lease without the written consent of the first party."

It therefore clearly appears from the terms of the lease that plaintiff was under no obligation to furnish heat and light to the defendant Convention. The plaintiff, in violation of the restrictive covenant in the lease from defendant Maney to plaintiff, did transfer to defendant Convention all right and interest he had in said premises. The defendant Convention has attempted to set up this breach in defense of an action brought against them by plaintiff.

One to whom the term has been assigned in breach of the restriction. cannot set up the breach in defense of an action brought against him by the lessor on the lease, or in defense of an action brought against him by the lessee on obligations incident to the assignment. Adams v. Shirk, 104 Fed. 54; 43 C. C. A. 407. * * * A sublessee of the original lease cannot set up as a defense to an action by the lessee to enforce the covenants of the sublease that it was made in violation of a restriction against subletting, Fordyce v. Young, 39 Ark. 135.

Under the facts and circumstances in this case the plaintiff was not obliged to furnish heat and light for defendant Convention. So, it necessarily follows that defendant Convention's defense of constructive eviction is inapplicable and insufficient as against plaintiff's action for rent due and unpaid.

"Where a lessee transfers the whole term, reserving a rent to himself, such transfer is an underlease, as between the parties thereto, so far as to allow the lessee to have an action of debt for rent against the underlessee or any assignee under him." Adams v. Beach, 1 Phila. 99.

We, therefore, conclude that the trial court did not err in sustaining plaintiff's demurrer to defendant Convention's evidence.

Judgment of the trial court is affirmed.

LESTER, V. C. J., and HUNT, HEFNER, SWINDALL, and ANDREWS, JJ., concur.

MASON, C. J., and RILEY and CLARK, JJ., absent and not participating.