## SHULER *et al.* v. HALL.

No. 3201.   Opinion Filed April 17, 1914.

Rehearing Denied June 16, 1914.

(141 Pac. 280.)

1.   **CANCELLATION OF INSTRUMENTS** — Fraud — Sufficiency of Petition.   In an action to rescind a contract induced by fraud, a petition which shows what the acts of fraud were, and that plaintiff acted upon them believing them to be true, and that such fraudulent acts and false pretenses were the sole inducement to the making of the contract, and shows that the representations which lead to the contract were wholly false, and wherein they were false, and shows the extent and effect of the fraud, states a cause of action.

2.   **APPEAL AND ERROR**—Review—Objections to Instructions.   In order for a party to avail himself of an alleged error in an instruction, it must appear from the record that the instruction complained of was duly excepted to at the time.

3.   **EVIDENCE**—Parol Evidence—Fraud.   Where an instrument is attacked for fraud, all the circumstances and transactions leading up to and surrounding the execution of the instrument, as well as the motives and intentions that prompted the makers to execute it, may be shown by parol.

(Syllabus by Harrison, C.)

*Error from Superior Court, Oklahoma County;*
*E. D. Oldfield, Judge.*

Action by Thomas R. Hall against C. E. Shuler and others. Judgment for plaintiff against Shuler and H. L. Kerns, and they bring error.   Affirmed.

*Burwell, Crockett & Johnson,* for plaintiffs in error.

*Carlisle & Edwards,* for defendant in error.

Opinion by HARRISON, C.   This was an action begun by Thomas R. Hall against the company itself and the individual parties composing what was styled the "Square Deal Realty Company," of Oklahoma, to rescind a contract induced by fraud, or for damages sustained by reason of the fraudulent misrepresentations which induced the contract; the contract in question be-

ing that plaintiff agreed to convey a certain tract of land in Oklahoma county, Okla., to defendants in exchange for a deed to a certain tract of land in Texas county, Mo.

The plaintiff alleged in his petition, and then introduced testimony tending to prove the allegations, that, having had his land listed with the Square Deal Realty Company for sale, he learned that the company had a tract of land in Missouri for sale, trade, or exchange, and went to them, to their office, to ascertain if such information were true, and to further ascertain the character and value of the Missouri land, and whether an exchange could be made of his land in Oklahoma county for their land in Texas county, Mo. After talking the matter over with them, it was agreed among all parties that the exchange of property could be made; whereupon a written contract was entered into to the effect that Hall would execute a deed conveying his tract of land in Oklahoma county to the Square Deal Realty Company, and that the company would execute a deed conveying the Missouri land to Thomas R. Hall. Pursuant to such agreement the respective deeds were executed and delivered, and the properties exchanged. The facts which lead to the agreement were substantially that Hall's land in Oklahoma county had certain incumbrances, part of which were to be released by Hall, the remainder of which to be assumed by defendants, and that the land was of a certain character, with certain improvements thereon, and that the Missouri tract of land had no incumbrances, was all tillable, fenced, and cross-fenced with wire, land of a rich, black, sandy soil, no rocks, no ditches, not subject to overflow, no sand or gravel, five-room house sided and painted, stone foundation, and had been built only about two years, two-story frame barn, 16x20 feet, shingled roof, chicken house, shed, good well, on R. F. D. and telephone lines, ten acres bearing orchard and berries, rented the previous year for $250. These representations in substance were made verbally to Hall by the defendants, and before the final consummation of the deal they scratched up a written description of the Missouri land in some of their desks which described it in practically the same terms.

Hall insisted that he have time or be given an opportunity before closing the deal to go to Missouri and look at the Missouri tract; but defendants insisted that they had other deals on for the exchange of the Missouri tract, and that time was very essential to them, and that they were liable for any misrepresentations they might make—they were the Square Deal Realty Company; and during the conversation leading up to the agreement a phone call was put in to the Square Deal Realty Company, and one of the parties answered in a conversation purporting that some one else was anxious for an opportunity to get in on the Missouri land deal, and the party answering the phone for the Square Deal Realty Company answered that they already had a party with whom they were dealing for such land. Upon these representations and maneuverings Hall was induced to and did enter into the agreement for an exchange of deeds to the respective tracts of land. Upon visiting the Missouri land, Hall alleged in his petition, and so stated on the witness stand, that each and every representation as to the character of the tract of land and the improvements thereon made by defendants was false and wholly untrue; that the land was located on the side of a rocky hill almost entirely covered with pine and oak stumps and small scrub brush, the soil of a dry, ashy nature, poor, rocky, and worthless, none of the land under cultivation was at all tillable, no house, barn, shed, or chicken house on same as had been represented, no well, no orchard, except two decayed old apple trees, no R. F. D. nor telephone lines near said land, nor road near same, and that the land had not been rented for any sum the previous year, but was entirely worthless, and could not be used for any purpose. Upon ascertaining these facts, he immediately returned to Oklahoma, sought counsel in the matter as to what his rights were, offered to return everything he had received, and asked a reconveyance of the properties; and, upon the refusal of said Square Deal Realty Company to reconvey, this action was brought to force a reconveyance, or, in the event same could not be had, that he have judgment for the damages he had sustained by reason of the fraud.

The cause was tried and verdict rendered in favor of Hall against defendants Shuler and Kerns for the sum of $1,250, the other defendants having been dropped out of the case, and, from such judgment, Shuler and Kerns appeal upon sixteen assignments of error, nine of which are presented and argued in the brief. Of these the second assignment goes to the sufficiency of the petition to state a cause of action. The first, third, and fourth, to the measure of damages. The seventh, to the admission of testimony which is claimed to have tended to vary the terms of a written contract. The fourth, sixth, eighth, and ninth, to the sufficiency of the evidence to sustain the verdict. As the second assignment goes to the sufficiency of the petition, we will consider it first.

We think the petition very clearly stated a cause of action. It stated in plain language just what the acts of fraud and misrepresentation consisted of; that Hall believed them to be true, and, acting on such belief, was induced to and did enter into the contract; that he requested an opportunity to inspect the Missouri land, but was dissuaded from so doing by defendants through their misrepresentations as to the character of the land and their pretentions that they had other parties who were anxious to get in on the deal. It further showed that all the representations made were absolutely false, and the tract of land in Missouri utterly worthless, and that as soon as plaintiff learned of the fraud he immediately took steps to rescind the trade and offered to restore all he had received from defendants. This, we think, was a sufficient statement of facts to entitle him to the relief asked for in his petition. It was amply sufficient to enable both the court and jury to know that he had been defrauded, and in just what way he had been defrauded, and to what extent he had been defrauded. Hence this contention cannot be sustained.

Second. As to the contention made in the fourth, sixth, eighth, and ninth assignments, all of which are based upon the alleged insufficiency of the evidence, we think it likewise without

merit, as the evidence disclosed by the record, not only maintains the allegations in the petition, but amply sustains the jury's verdict.

In the first, third, and fourth assignments of error, complaint is made of the measure of damages given to the jury by the court; such contention being based principally upon the alleged error contained in paragraph 8 of the court's charge. No exception was saved as to this or any other paragraph of the instruction; but plaintiffs in error contend for the rule announced in 38 Cyc. 1808, citing *Beazley v. Denson,* 40 Tex. 416, that:

"Where the verdict of the jury has been made to turn upon an erroneous charge, and the judgment upon the merits is thus founded on error, the judgment will be reversed, although no exceptions were saved."

While cases might arise in which this rule might be correctly applied, yet such rule could not be applied to the case at bar, because it does not appear from the record that the verdict of the jury was made to turn upon an erroneous charge, nor that the judgment upon the merits was founded on error. We believe upon the whole that the verdict was well merited, and that the failure to except to the instructions complained of subjects the plaintiffs in error to the settled rule of this court that, in order for a party to avail himself of an error in an instruction, he must have excepted to same at the time. See *Gann v. Ball,* 27 Okla. 452, 112 Pac. 1134; *Finch v. Brown,* 27 Okla. 217, 111 Pac. 391; *Incorporated Town of Stigler v. Wiley,* 36 Okla. 291, 128 Pac. 118.

The seventh assignment is based upon the contention that parol testimony tending to vary the terms of a written contract was erroneously admitted; but it must be observed that this was an action to rescind a contract induced by fraud. The action was based upon that ground alone. The fraud was clearly alleged in the petition, and the specific acts constituting such fraud and the effects thereof were alleged, and the effect of the fraud shown by testimony that was not denied. In such cases parol testimony tending to show the circumstances, statements, and representations which lead up to and induced the making of the instrument

alleged to have been induced by fraud is admissible. This rule has been recognized and followed under such circumstances by nearly every state in the Union. At least the courts of 36 different states, together with the United States Supreme Court and the courts of England and Canada, have followed this rule. In 17 Cyc. 695, the rule is stated as follows:

"It is well established that, as fraud vitiates everything which it touches, parol evidence is always admissible to show, for the purpose of invalidating the written instrument, that its execution was procured by fraud, or that by reason of fraud it does not express the true intentions of the parties."

In *Fairbanks v. Simpson* (Tex. Civ. App.) 28 S. W. 128, it was held that, "where the instrument is attacked for fraud, * * * all the circumstances and transactions leading up to and surrounding the execution of the instrument, as well as the motives and intentions that prompted the makers to execute it," may be shown.

We think the trial court committed no error in the admission of the testimony complained of, and that the judgment appealed from should be affirmed.

By the Court: It is so ordered.